COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, O'Brien and Retired Judge Bumgardner*

MICHAEL ALLEN JOHNSON

v.      Record No. 0628-18-4

FAIRFAX COUNTY DEPARTMENT
 OF FAMILY SERVICES

MEMORANDUM OPINION**
PER CURIAM
JANUARY 8, 2019

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Brett A. Kassabian, Judge

(Paul D. Langley; Langley and Langley, on brief), for appellant.

(Elizabeth D. Teare; May Shallal; Jessica C. Miller, Guardian *ad litem* for the minor child; Office of the County Attorney, on brief), for appellee.

Michael Allen Johnson (father) appeals the orders terminating his parental rights and approving the foster care goal of adoption. Father argues that the circuit court erred in (1) terminating his parental rights to his child because the Fairfax County Department of Family Services (the Department) "did not meet its burden under Section 16.1-283(C)(1) of the Code of Virginia" and (2) finding that the Department had met its burden in proving "by clear and convincing evidence that it was in the best interests of [the child] to terminate [father's] parental rights." Upon reviewing the record and briefs of the parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the circuit court. See Rule 5A:27.

---

* Retired Judge Bumgardner took part in the consideration of this case by designation pursuant to Code § 17.1-400(D).

** Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal, 'we view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department.'" Farrell v. Warren Cty. Dep't of Soc. Servs., 59 Va. App. 375, 386 (2012) (quoting Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1180 (1991)).

Mother and Michael Johnson (father) are the biological parents to the minor child, D.R. From the time that D.R. was two weeks old until she was three years old, Iris Boxley-Lewis, a family friend, helped to take care of D.R. Mother did not have a place to live, so D.R. lived with Boxley-Lewis. Mother and father visited with D.R. at various times; however, mother visited more often than father. Once mother had housing, D.R. started living with mother.

In April 2016, D.R. was ten years old and lived in a home with Darlene Ross (the maternal grandmother), as well as the maternal grandmother's minor son, three of her adult daughters, and five of her grandchildren. On April 12, 2016, the Department received a referral for possible physical neglect of one of the minor children in the home. After an investigation, the Department sought a preliminary protective order for D.R., which the Fairfax County Juvenile and Domestic Relations District Court (the JDR court) granted *ex parte* on April 19, 2016. At the next JDR court hearing on April 25, 2016, the maternal grandmother informed the court that she was unable to care for several of her grandchildren, including D.R. The JDR court entered an emergency removal order, and the Department placed D.R. in foster care. At the time of the removal, father was incarcerated.

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record for purposes of resolving the issues raised by appellant. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

On April 28, 2016, the JDR court entered a preliminary removal order and directed father to cooperate with DNA paternity testing. On May 17, 2016, the parties agreed that the facts were sufficient to support a finding that D.R. was at risk of being abused or neglected. The JDR court subsequently entered a dispositional order and reiterated that father was to submit to a paternity test.

Father was incarcerated for most of the time that D.R. was in foster care. A paternity test confirmed that father was D.R.'s biological father. In May 2017, father was not incarcerated and spoke with the Department about D.R., but he did not offer a plan for D.R.'s future. Father visited with D.R. once before he was incarcerated again. The Department twice attempted to visit with father while he was in jail; however, it was unable to meet with him. On one occasion, father was in mental health segregation, and on the other occasion, he was placed "into hold" after fighting in the jail. Considering father's circumstances, the Department determined that he was not a placement option and could not care for D.R.

In August 2017, the Department filed a petition to terminate father's parental rights to D.R. On November 17, 2017, the JDR court entered orders terminating father's parental rights and approving the foster care goal of adoption. Father appealed to the circuit court.[2]

---

[2] The JDR court also terminated mother's parental rights, and she appealed to the circuit court.

On March 12 and 13, 2018, the parties appeared before the circuit court.[3] The Department presented evidence that in 2017, Dr. Ling conducted a psychological evaluation of D.R. and diagnosed her with Disinhibited Social Engagement Disorder, which is a subcategory of Reactive Attachment Disorder, with a secondary diagnosis of Disruptive Mood Disorder. Dr. Ling explained that children diagnosed with Reactive Attachment Disorders usually have been exposed to an "extended period of abuse or neglect." Dr. Ling also diagnosed D.R. with attention deficit hyperactivity disorder and a learning disorder in reading comprehension and spelling. Then, in 2018, Dr. Ling conducted a neuropsychological evaluation of D.R. Although he noticed that D.R. had improved in her functioning, she continued to demonstrate patterns of inattentiveness and distractibility and still had problems with impulse regulation. Dr. Ling opined that D.R.'s prognosis was "pretty good" as long as she has "ongoing stability and consistency and appropriateness within the relationships between herself and those who are providing care for her."

The Department presented additional evidence concerning D.R.'s development and her progress in foster care. According to her social worker, D.R. was "doing really well" and "thriving" in her current foster care placement, which was a potential adoptive placement. D.R.'s therapist, Amy Anderson, testified that in October 2016, D.R. initially presented as "very angry . . . and demanding," but over time, she had "matured" and become "calmer." D.R.'s

---

[3] On September 14, 2018, mother and father filed a "Motion to file duplicate original transcript or in the alternative file transcript out of time." The circuit court heard evidence and argument on March 12 and 13, 2018. The transcript for the March 12, 2018 hearing was timely filed and forwarded to this Court. See Rule 5A:8. Mother and father provided evidence that the court reporter timely delivered, to the circuit court, the transcript for the March 13, 2018 hearing; however, the transcript was not part of the record sent to this Court. A duplicate transcript of the March 13, 2018 hearing was filed on September 18, 2018. This Court grants mother and father's motion and accepts the transcript for the March 13, 2018 hearing as timely filed and, thus, part of the record on appeal. Rule 5A:8.

foster father testified that she had improved her reading and was expected to be reading on grade level by the end of the school year. He also stated that her behavioral issues had improved.

At the conclusion of the Department's evidence, father moved to strike, which the circuit court denied. Father testified that he had been incarcerated for most of the time that D.R. had been in foster care, with the most recent period of incarceration beginning in February 2018; however, there were two periods of time when he was home. In May 2017, father was home for eight or nine days, during which he contacted the social worker and saw D.R. Father also was home for eighty-six days between November 2017 and February 2018, but he did not contact the social worker or see D.R. during that time period. Father testified that he had a "very special bond" with D.R. and had been home for five of her eight birthdays, as well as four Christmases. He also admitted that D.R. stayed with him and mother for "two or three days" at his mother's house "[w]hen she was real young," but he did not take her to live with him while she was living with the maternal grandmother. Recognizing that he "wasn't there a lot of times" and that he faced uncertainty about the length of his sentence for the pending charges, father indicated that his preference was for D.R. to be reunited with mother or her grandmother.

At the conclusion of all of the evidence, father renewed his motion to strike, which the circuit court denied. After hearing the parties' arguments, the circuit court terminated father's parental rights pursuant to Code § 16.1-283(C)(1) and approved the foster care goal of adoption.[4] This appeal followed.

ANALYSIS

Father argues that the circuit court erred by finding that the evidence was sufficient to terminate his parental rights pursuant to Code § 16.1-283(C)(1). He further contends that the

_____

[4] The circuit court also terminated mother's parental rights, and she appealed the circuit court's rulings. See Ross v. Fairfax Cty. Dep't of Family Servs., Record No. 0611-18-4.

Department failed to provide him with appropriate services and that the termination of his parental rights was not in the best interests of D.R.

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Termination under Code § 16.1-283(C)(1) requires clear and convincing evidence that

> [t]he parent [has] . . . without good cause, failed to maintain
> continuing contact with and to provide or substantially plan for the
> future of the child for a period of six months after the child's
> placement in foster care notwithstanding the reasonable and
> appropriate efforts of social, medical, mental health or other
> rehabilitative agencies to communicate with the parent or parents
> and to strengthen the parent-child relationship.

"Proof that the parent . . . [has] failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition." Id.

The Department proved that while D.R. was in foster care, father contacted the Department only once in May 2017. He did not contact the Department again, despite being home between November 2017 and February 2018. The circuit court held that father could have contacted the Department by telephone or by letter, but he did nothing. Father's only contact with the child was a single visit. Furthermore, father had no plans for D.R.'s future, other than that she should live with mother or her grandmother, an option that the circuit court rejected.

"'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Harrison v. Tazewell Cty. Dep't of Soc. Servs., 42 Va. App. 149, 163 (2004) (quoting Ferguson v. Stafford Cty. Dep't of Soc. Servs., 14 Va. App. 333, 338 (1992)). Contrary to father's arguments, the Department was not required to offer him services while he was incarcerated. This Court has held that "[i]t would be patently unreasonable to require the Department, under such circumstances, to continue to offer services." Id. at 163-64. "[A]s long as he was incarcerated, the Department would have had no avenue available to offer [father] services aimed at assisting him in regaining custody of the child." Id. at 164. Nevertheless, the Department attempted to visit father twice while he was incarcerated. The Department also met with father in May 2017 to discuss D.R. Father did not communicate with the Department after the meeting in May 2017.

> [W]hile long-term incarceration does not, per se, authorize termination of parental rights . . . it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support a court's finding by clear and convincing evidence that the best interests of the child will be served by termination.

Ferguson, 14 Va. App. at 340.

The circuit court found that "there was no real contact at all" on father's part. The circuit court further found that

> [t]here has been approximately 23 consecutive months since placement of a lack of contact, and there is absolutely no plan that was presented in this case for the future of the child, other than his statement under oath that the child should be with the mother in this case, which the [c]ourt rejects.

The Department presented evidence that D.R. was thriving in foster care placement and that her mental health was improving. There was no evidence of when father might be in a position to care for D.R., and in fact, he was uncertain as to how long he would be incarcerated

on his pending charges. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)).

Considering the circumstances of the case, the circuit court did not err in finding that the evidence was sufficient to terminate father's parental rights under Code § 16.1-283(C)(1) and that termination of father's parental rights was in D.R.'s best interests.

## CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27. Furthermore, we remand the case to the circuit court to correct a clerical mistake in its final order, which erroneously states that father's parental rights were terminated under Code § 16.1-283(C)(1) and (C)(2). However, it is clear from the record that the circuit court intended to terminate father's parental rights under Code § 16.1-283(C)(1) only. Therefore, the matter is remanded for the circuit court to enter a corrected order. See Code § 8.01-428(B).

Affirmed and remanded.